GENERAL MOTORS CORPORATION,
Petitioner,

v.

Maria G. SAENZ, on Behalf of her Minor
Children, Ricardo SAENZ, Jr. and Isaiah Saenz, and on behalf of the Estate of
Ricardo Saenz, Sr.; Gloria Ramirez, Individually and on behalf of her Minor
Children, Jackie Lee Ramirez, Josue Ramirez, Jr., and Jose Angel Ramirez, and
on behalf of the Estate of Josue Ramirez, Sr.; Belia Saenz; Jose Ramirez,
Sr. and Maximina Ramirez, Respondents.

No. D–2578.

Supreme Court of Texas.

Nov. 24, 1993.

Dissenting Opinion of Justice Gammage
Dec. 8, 1993.

Rehearing Overruled May 11, 1994.

Royal H. Brin, Jr., Dallas, David M. Heilbron, Leslie G. Landau, San Francisco, CA, Charles W. Hury, McAllen, for petitioner.

Ramon Garcia, Edinburg, Phil Harris, Weslaco, Victor M. Carrera, McAllen, Thomas O. Matlock, Jr., Mission, Robert L. Guerra, McAllen, Horacio Pena, Mission, Felipe Garcia, Jr., Edinburg, Robert B. Luther, Max J. Luther, III, P.C. & Associates, Austin, for respondents.

## OPINION

HECHT, Justice.

The principal issue we address is whether a manufacturer's failure to give adequate instructions for the safe use of its product can be the cause of an injury which would not have occurred if the instructions the manufacturer did give had not been ignored. The trial court rendered judgment against the manufacturer in this case, and a divided court of appeals affirmed. 829 S.W.2d 230. We reverse.

## I

Ricardo Saenz was driving his employer's water tank truck down the highway when a rear tire blew out, causing him to lose control of the vehicle, which overturned, killing Saenz and his passenger, co-worker Josue Ramirez. Decedents' beneficiaries, plaintiffs in this case, contend that the accident occurred because the truck was overloaded, due to the failure of the manufacturers to provide adequate warnings against overloading.

The water tank truck was built in two stages. The bare truck—the cab and chassis, without the water tank—was a Model C–50 Chevrolet manufactured by General Motors Corporation in 1972. The Model C–50 was designed and built so that it could be modified for a wide variety of uses. The original owner installed a winch on the vehicle and used it as a tow truck. Fifteen years later the bare truck (without the winch) was sold to Sascon, Inc., a paving and utility contractor. Sascon added a 2,000–gallon water tank to the truck so that it could be used to haul water around construction sites. A few weeks later Sascon sold the water tank truck to Cantu Lease, Inc., a construction company and decedents' employer.

When the water tank was full, the truck greatly exceeded its gross vehicle weight rating, or GVWR—the maximum safe weight for the entire vehicle, bare truck, added equipment, load, passengers and all. The truck's GVWR was imprinted on a metal plate which GM had attached to the doorjamb, in conformity with federal regulations, on the driver's side at eye level. *See generally* 49 C.F.R. §§ 567.4(c) and 567.5 (1972, 1991) (placement of label); *cf.* §§ 568.4–568.-7(a) (1972, 1991). The plate stated that overloading could void the warranty and referenced the owner's manual for additional information. Page two of the owner's manual was captioned, in large block letters, *"IMPORTANT INFORMATION ON VEHICLE LOADING"*. The text stated, in part: "OVERLOADING SAFETY CAUTION: ... Overloading can create serious potential safety hazards and can also shorten the service life of your vehicle." (The full text of the doorplate and related portion of the owner's manual are set out in the court of appeals' opinion, 829 S.W.2d at 239–240.)

The doorplate was still fixed in its place and the owner's manual was in the glove compartment when Sascon purchased the bare truck. Although the owner of Sascon testified that he would not have had so large a tank installed on the truck if he had known that it would hold more water than the truck could safely carry, he also testified that no one at Sascon ever checked either the doorplate or the owner's manual to ascertain the vehicle's GVWR. Sascon was not concerned about the weight and stability of the loaded truck because it did not intend for the truck to be operated with a full load except in very limited circumstances. Sascon's practice was to not fill the tank until the truck arrived at a construction site, and then to drive it around the site at no more than 3–5 miles per hour to dispense the water. Usually, most of the water was discharged within a short time and

distance after the tank was filled. Sascon's president testified that this was the standard way contractors used water trucks because of safety considerations, and that he assumed Cantu, also a contractor, would use the truck the same way. Accordingly, when Sascon sold the tank truck it did not warn Cantu against overloading.

The doorplate and owner's manual remained in place when Cantu purchased the truck. One of Cantu's owners noticed that when the truck was driven with a full tank on a bumpy road, it was so heavy that the fenders hit the tires. To try to correct this problem, a Cantu employee welded spacers to the truck's frame. However, no one at Cantu attempted to determine whether the load on the truck when the tank was full was too heavy. The day of the accident, Saenz and Ramirez were directed to drive the truck to a job site more than 100 miles away. Saenz drove, although he had no license, and Ramirez rode in the passenger seat. The accident occurred while the truck was traveling at highway speeds.

Plaintiffs sued GM and five other defendants [1] for the wrongful death of Saenz and Ramirez. Plaintiffs claimed damages for themselves and decedents' estates, based upon allegations of negligence and strict liability. Plaintiffs settled with three of the six defendants before trial and with Sascon during trial, receiving a total of $1,605,000.[2] At the time the case was submitted to the jury GM was the only remaining defendant. The jury found that the accident was caused by GM's inadequate warnings and instructions for the safe use of the truck, and by Sascon's defective design and construction of the completed water tank truck, as well as its inadequate warnings and instructions for the safe use of the truck. The jury apportioned responsibility for the accident, 70% to GM, and 30% to Sascon, and found plaintiffs' damages to be $3,115,000. The jury also found that GM was grossly negligent and assessed punitive damages of $2,500,000. The trial court rendered judgment on the verdict against GM for 70% of plaintiffs' actual damages and all punitive damages, ad litem fees, court costs and interest, the total exceeding $4.8 million.

A divided court of appeals affirmed. The court concluded that GM had a duty to warn of the dangers of overloading its vehicles because it knew of those dangers and could foresee that they would arise in the use of the Model C–50. The court reasoned that Sascon's modification of the truck did not vitiate GM's duty because not only could GM have expected that the Model C–50 would be modified for various uses, it designed the truck for just that purpose. By referring in the doorplate and owner's manual to the dangers of overloading, GM acknowledged its duty to warn all users of those dangers, the court observed, but those warnings were inadequate in four respects: (1) GM provided no information concerning "the truck's maximum safe center of gravity for a particular load", (2) the doorplate "did not clearly state how much payload the truck could carry", (3) the risk of rolling the truck was not specifically disclosed, and (4) cautionary language was not set apart from "boilerplate." 829 S.W.2d at 240. The court stated that there is a presumption that an adequate warning would have been heeded, and that GM failed to rebut this presumption, even though the evidence establishes that Sascon and Cantu paid no attention to the doorplate or owner's manual. Accordingly, the court concluded that GM's failure to give an adequate warning caused the accident.

Chief Justice Nye dissented. He agreed that GM had a duty to warn against overloading but concluded that the doorplate and owner's manual were adequate. In his view, the court wrongly required GM "to provide additional or specialized warning" about the use of the vehicle as a water tank truck. 829 S.W.2d at 247. While GM anticipated the

1. Plaintiffs also sued Sascon, Cantu, Southwest Tank & Supply Co., the manufacturer of the tank, Goodyear Tire & Rubber Co., and Firestone Tire & Rubber Co.

2. Plaintiffs received $800,000 from Sascon, $500,000 from Cantu, $290,000 from Southwest Tank & Supply Co., the manufacturer of the tank, and $15,000 from Goodyear Tire & Rubber Co. The record does not reflect whether plaintiffs also settled with Firestone Tire & Rubber Co.

truck would be modified, it could not have foreseen, the dissent argued, all possible dangers that might arise "because of some unique characteristic resulting from subsequent modifications". *Id.* Moreover, the dissent reasoned, even if GM's warnings were inadequate, the failure to give different warnings could not have caused the accident when no one paid any attention to the warnings that GM gave.

## II

We first consider whether the court of appeals correctly held that GM violated a duty to warn against overloading its truck. The existence of a duty to warn of dangers or instruct on proper use is a question of law. *Joseph E. Seagram & Sons v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991). Generally, a manufacturer has a duty to warn if it "knows or should know of potential harm to a user because of the nature of its product." *Bristol–Myers Co. v. Gonzalez,* 561 S.W.2d 801, 804 (Tex.1978). The determination of whether a duty to warn exists is made as of the time the product leaves the manufacturer. RESTATEMENT (SECOND) OF TORTS § 402A (1965).

GM does not dispute that it had a duty to warn all users of its truck against overloading but argues that its doorplate and owner's manual satisfied that duty. GM contends, along with the dissent below, that the court of appeals imposed upon it the additional duty of warning against the dangers of overloading with respect to particular uses of the truck. Specifically, GM argues that the court of appeals held that it was required not only to state the truck GVW but to warn against filling up a water tank that was too big for the truck to carry. Amicus curiae summarizes the holding of the court of appeals as follows: "the manufacturer of an incomplete vehicle that provides information about the fundamental characteristics of the vehicle component can be liable for failure to warn of a specific hazard caused by modifications made by others years later without knowledge of the manufacturer". GM argues that imposing this additional duty places an impossible burden on manufacturers which cannot anticipate all the various uses to which their products will be put, and is contrary to the rule of *Verge v. Ford Motor Co.,* 581 F.2d 384 (3d Cir.1978), which has been followed in Texas, *Elliot v. Century Chevrolet Co.,* 597 S.W.2d 563 (Tex.Civ.App.–Fort Worth 1980, writ ref'd n.r.e.), *Trevino v. Yamaha Motor Corp.,* 882 F.2d 182 (5th Cir. 1989) (applying Texas law).

*Verge* held that liability for a design defect in a finished product manufactured by more than one person can be imposed upon only those manufacturers responsible for the defective condition. In determining responsibility, the court looked to three factors: trade custom, relative expertise, and practicality. Applying these factors, the court concluded that responsibility for failing to add a backup alarm to a truck should fall not on the manufacturer of the bare chassis but on the manufacturer which added a garbage compactor to the truck. *Elliott,* a case involving very similar facts, applied the *Verge* rule and reached the same result.

Plaintiffs do not argue that the *Verge* rule is incorrect, only that it does not apply in this case. Plaintiffs acknowledge that the factors in *Verge* should be used to determine the respective responsibility of GM and Sascon for failing to warn Cantu of the specific dangers of operating the vehicle in its configuration as a water tank truck. However, plaintiffs do not contend that GM should bear any part of this responsibility. Rather, plaintiffs argue that GM was required to warn generally of the dangers of overloading its truck—an argument that, as noted, GM concedes—and that its efforts to discharge this responsibility were inadequate.

We do not construe the majority opinion of the court of appeals to reach beyond plaintiffs' contentions. Reading that opinion as a whole, we conclude that the court of appeals held only that GM failed to discharge the duty imposed on first stage manufacturers—that is, the duty to warn against known and foreseeable dangers of the product actually made. The court of appeals did not impose on GM a duty (which the law does not prescribe) to warn against dangers inherent in specific modifications which it could not foresee. Though there is language in the majority opinion which, read by itself, sug-

gests a broader holding (for example, that GM failed to provide information regarding the safe center of gravity "for a *particular* load", 829 S.W.2d at 240), to give such language controlling effect would misconstrue the majority opinion.

GM does not argue that the evidence is legally insufficient to show a breach of its duty to warn. Accordingly, we conclude that the court of appeals did not err in holding that GM breached that duty.

### III

We next consider whether GM's failure to provide warnings and instructions concerning the maximum loading of the Model C–50, different from those contained on the doorplate and in the owner's manual, caused the accident in this case. Plaintiffs must show that GM's failure was a proximate cause of the accident to recover on their negligence claim, and a producing cause to recover on their strict liability claim—the difference being that proof of proximate cause entails a showing that the accident was foreseeable, while proof of producing cause does not. The element common to both proximate cause and producing cause is actual causation in fact. Thus, to recover on either of their claims plaintiffs must show that but for GM's omission the accident would not have occurred.

GM argues that its failure to give a different warning could not have caused the accident when no one paid any attention to the warnings it did give. Plaintiffs respond that the law presumes adequate warnings will be heeded, absent contrary evidence which GM did not offer. From this presumption, plaintiffs contend, it follows that if GM had given adequate warnings, they would have been heeded and the accident would have been prevented. Thus, plaintiffs conclude, GM's failure to give adequate warnings was at least one cause of the accident. GM replies that no presumption can substitute for the proven fact that its warnings went unheeded.

We begin by considering the nature of the presumption on which plaintiffs rely.

### A

Proving causation in a failure-to-warn case has peculiar difficulties. Proof that a collision between two cars would not have happened had defendant swerved or braked or driven within the speed limit is mostly a matter of physics. Proof that an accident would not have occurred if defendant had provided adequate warnings concerning the use of a product is more psychology and does not admit of the same degree of certainty. A plaintiff must show that adequate warnings would have made a difference in the outcome, that is, that they would have been followed. In the best case a plaintiff can offer evidence of his habitual, careful adherence to all warnings and instructions. In many cases, however, plaintiff's evidence may be little more than the self-serving assertion that whatever his usual practice may have been, in the circumstances critical to his claim for damages he would have been mindful of an adequate warning had it been given. In the worst case, where the user of the product is deceased, proof of what the decedent would or would not have done may be virtually impossible.

We recognized this problem of proving causation in *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972). As one solution, we observed: "It has been suggested that the law should supply the presumption that an adequate warning would have been read." However, we did not accept this suggestion in *Technical Chemical* or employ the presumption to assist plaintiff in proving causation. Defendant in that case manufactured cans of freon, each of which bore a label which warned against allowing the can to become overheated but did not include a warning against attaching the can to the pressure side of an air conditioning system. The jury found defendant at fault for failing to provide this warning, but refused to find that defendant's failure caused plaintiff's injury. Plaintiff admitted that he had not read the label on the can before using it. We held that the jury was free to conclude from this admission that plaintiff would not have read the label if it had contained the additional warning.

This Court did not actually adopt the presumption suggested in *Technical Chemical* until our opinion in *Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832, 834 (Tex. 1986). The plaintiff in *Magro* suffered an injury to his hand while cleaning a machine which he had never been instructed how to operate. The jury found that the lack of instructions caused plaintiff's injury, but the court of appeals concluded that there was insufficient evidence to support the finding. In reversing the judgment of the court of appeals, we explained.

> An unreasonably dangerous product must be a producing cause of plaintiff's injuries to create liability.... Once a plaintiff proves the lack of adequate warnings or instructions rendered a product unreasonably dangerous, his producing cause burden is aided by the presumption described in *Technical Chemical*.... When a manufacturer fails to give adequate warnings or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions.... This presumption may be rebutted with evidence that the user was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstances tending to show that the improper use would have occurred regardless of the proposed warnings or instructions....

*Id.* (citations omitted). We held that this presumption was not rebutted in *Magro* by proof of a single instance of inattentiveness on the part of plaintiff. We considered the presumption as support for the jury's finding of causation, although we noted that there was other evidence to support the finding, including plaintiff's testimony that he would have heeded a warning had it been given.

The arguments against a presumption that adequate warnings will be heeded were not examined in *Technical Chemical* or *Magro*. One such argument is that the authority usually cited for the presumption, and referred to in both cases, comment j to section 402A of the Restatement (Second) of Torts,

is not supportive. Comment j states in relevant part: "Where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if followed, is not in defective condition, nor is it unreasonably dangerous." This sentence, the argument runs, is nothing more than a recognition of the obvious, that if the seller provides adequate instructions for use of his product, he cannot be liable for the buyer's failure to follow them. After all, you can lead a horse to water but you can't make him drink. It is no more logical to conclude from comment j that a buyer would have read adequate instructions had they been given, than it is to think that a horse would have drunk if he had been led to water. In fact, goes the argument, experience with buyers, if not with horses, is largely to the contrary, as it is not at all unusual for a person to fail to follow basic warnings and instructions.

This argument against reliance on comment j is persuasive, but it is not conclusive.[3] Removing one of the bases cited for the presumption does not leave it without support. The real reason for the presumption, the problem of proving causation in failure-to-warn cases, remains. This basis for the presumption is attacked by the argument that while the proof problem is real, a presumption does not solve it and may even make it worse. James A. Henderson Jr. & Aaron D. Twerski, *Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn*, 65 N.Y.U.L.REV. 265, 325–326 (1990). While the proof problem affects parties differently in different cases, a presumption solution always operates to benefit the favored party and thus ignores the reality of many situations. The presumption here always helps the plaintiff even, according to the argument, when he does not need it, and never helps the defendant, even when he does. The only real solution to the problem, the argument concludes, is a case-by-case analysis of the causation evidence. *Id.*

■ This argument is far more logical than practical. It ends where it begins, call-

---

3. The dissent seems to think that by reciting this argument we adopt it, despite our statement to the contrary.

ing for a better solution to the problem of proving causation in failure-to-warn cases, but suggesting no rules or procedures to accomplish this goal. We continue to believe the *Magro* presumption remains the best solution to the problem. It excuses plaintiff from the necessity of making self-serving assertions that he would have followed adequate instructions, simply to put the issue of causation in sufficient dispute to avoid summary judgment or directed verdict, and it assists plaintiffs in cases where the person injured has died and evidence of what he would have done is unavailable for that reason. The presumption is not conclusive but subject to rebuttal by the defendant.

■ The presumption is subject to the same rules governing presumptions generally. Its effect is to shift the burden of producing evidence to the party against whom it operates. *Combined Am. Ins. Co. v. Blanton,* 163 Tex. 225, 353 S.W.2d 847, 849 (1962); *Empire Gas & Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763, 767–768 (1940); ROY R. RAY, TEXAS LAW OF EVIDENCE § 53, at 76–77 (3d ed. 1980); 9 WIGMORE, EVIDENCE § 2491 (Chadbourne rev. 1981). Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and "is not to be weighed or treated as evidence." *Blanton,* 353 S.W.2d at 849. The evidence on the issue is then evaluated as it would be in any other case. RAY, *supra,* at 77–82. The presumption has no effect on the burden of persuasion. *Id.* The facts upon which the presumption was based remain in evidence, of course, and will support any inferences that may be reasonably drawn from them. *Sudduth v. Commonwealth County Mut. Ins. Co.,* 454 S.W.2d 196, 198 (Tex.1970), *citing* WIGMORE, § 2491.

Thus, the presumption that adequate warning on products will be heeded places upon the defendant in a failure-to-warn case the burden of going forward with the evidence on causation. If, as in *Magro,* defendant offers evidence contrary to the presumption, then plaintiff must prove causation

by a preponderance of the evidence, and the presumption has no further legal consequence.

We turn now to whether this presumption arises in this case.

**B**

■ The presumption operates differently in cases like *Technical Chemical* and *Magro,* where no warning at all was given concerning the improper use of the product which injured plaintiff, than it operates in cases like the present one, in which the improper use is addressed by the manufacturer's warning, but not adequately. The defendant in *Technical Chemical* provided no warning against attaching its freon cans to the pressure side of a compressor, just as the defendant in *Magro* provided no warning of the dangers of working on its machine. In each case the defendant provided plaintiff with no information which might have prevented his accident, and the presumption therefore arises that had defendant done so, plaintiff would have heeded the warning. In the present case, GM warned against overloading its truck, but the jury found the warning to be inadequate. If despite the inadequacy of GM's instructions, following them would have prevented the accident, then their inadequacy could not have caused the accident. There is no presumption that a plaintiff who ignored instructions that would have kept him from injury would have followed better instructions.[4]

■ To determine whether the presumption arises in this case, we must look at the inadequacies found in GM's instructions. GM does not contest that its instructions were inadequate, and we therefore assume that they were. According to the court of appeals, GM's instructions were inadequate in four respects. The first is that GM failed to provide information concerning the truck's maximum safe center of gravity. This omission, however, was not the fact needed to

---

4. The dissent states that no justification is given for applying the presumption differently when a warning is inadequate as opposed to nonexistent. The justification is as we have here explained. It is one thing to presume that a person would have heeded a warning had it been given; it is another to presume that the person would have heeded a *better* warning when, *in fact,* he paid no attention to the warning given, which if followed would have prevented his injuries.

avoid injury. Plaintiffs' contention is that the accident occurred because the truck was overloaded. Whether the center of gravity of the loaded truck did or did not allow safe operation is beside the point. There is no reason why a warning concerning the truck's maximum safe center of gravity (assuming it could have been effectively explained) would have drawn more attention than the warning GM gave against overloading. When the warning that would have prevented injury was ignored, there is no presumption that some additional warning would have been heeded.

Two other inadequacies cited by the court of appeals are that GM's warning was not clear, and cautionary language was not set apart from other instructions. There is no reason to think that a clearer instruction would have been heeded. If an employee of Sascon or Cantu had read the doorplate and owner's manual in an effort to avoid overloading the truck and been confused or misled by the contents of those instructions, or overlooked them among others, it is reasonable to presume that a clearer warning would have been to greater effect. Simply clarifying the instructions or changing the way they were printed, however, would not have made Sascon's or Cantu's employees any more likely to read them.

The only other inadequacy the court of appeals noted is that GM's warning did not list rolling the truck as one of the risks of overloading. If someone at Sascon or Cantu had read GM's doorplate as indicating that the only danger from overloading was a voided warranty (despite the language in the owner's manual), it could be argued that specifying a danger of personal injury might have prevented the accident. But no one was misled by GM's warnings because no one read them.

Plaintiffs also argue that GM's warnings were inadequate because they were not displayed with sufficient prominence to draw attention. Although the court of appeals did not list this among the inadequacies in GM's warning, plaintiffs argue that a sticker should have been affixed inside the truck's cab near the gear shift lever, reading as follows:

WARNING Overloading this vehicle beyond its "as manufactured" GVW can result in loss of control or a rollover resulting in serious personal injury or death. (For additional information please refer to owner's manual)

(It should be noted that plaintiffs would not include information about a safe center of gravity on this sticker.)

A warning which is not displayed with sufficient prominence to give reasonable notice to the persons to whom it is directed is hardly better than no warning at all. If GM's warning against overloading in this case were not sufficiently prominent, plaintiffs would be entitled to the presumption that reasonable notice would have been heeded. The jury's finding that GM's warning was inadequate does not require the conclusion that the warning was inconspicuous; the finding may have been based on any one of plaintiffs' other claims of inadequacy. The fact that GM does not contest the finding of inadequacy does not amount to a concession that the warning was inconspicuous. Thus, we must examine whether there is any evidence that GM's warning was not sufficiently prominent.

Plaintiffs' argument that the warning could have been more prominent does not prove that it was not prominent enough. Every warning can always be made bigger, brighter and more obvious. GM could have placed the warning where it could not possibly have been overlooked, perhaps engraved upon the dashboard, or backlit on the instrument panel. But it clearly would not be possible for GM to place every important warning in such a position of maximum prominence. It can always be argued that a single instruction should have been given more prominence and if it had, an accident might have been prevented. This argument, however, must be considered in the context of the product involved. When, as here, it is important to give a number of instructions concerning the operation of a vehicle, not all of them can be printed on the dashboard. Indeed, the more instructions and warnings that are printed in one place—on the dashboard, on a doorplate, or in the owner's manual—the less likely that

any one instruction or warning will be noticed.

■ The issue is not whether GM could have placed its warning against overloading in a more prominent position, such as a sticker near the gear shift lever as plaintiffs argue; rather, the issue is whether the warning where it was actually placed was sufficient to give reasonable notice against overloading. GM's warning was posted where gross vehicle weights are customarily placed in compliance with federal regulations. *See* 49 C.F.R. §§ 567.4(c) and 567.5 (1972, 1991) (placement of label); *cf.* §§ 568.4–568.7(a) (1972, 1991).[5] It was at eye level on the driver's doorjamb. The owner's manual was in the glovebox. There is nothing in the record, and nothing in plaintiffs' arguments, to suggest why the warning GM gave was not sufficient to give reasonable notice against overloading. To the contrary, the evidence establishes that the warning did give reasonable notice. In these circumstances, plaintiffs' contention that the warning could have been more prominent does not entitle them to the presumption that it would then have been followed.

No inadequacy in GM's instructions gives rise to a presumption that a better warning would have been heeded.[6] Accordingly, we must consider whether there is any other evidence of causation to support the jury's verdict.

### C

There is no evidence that anyone at Sascon or Cantu would have read a warning free from the inadequacies determined by the court of appeals. Indeed, given that they did not read the warnings GM provided, there is no reason why they would have read the warnings which the court of appeals held should have been provided. While GM could have made the warning inescapably obvious, more than it was, it had no duty to do so. Thus, there is no evidence that the inadequacies in GM's warning caused the accident.[7]

\*   \*   \*   \*   \*   \*

Inasmuch as plaintiffs failed to prove that GM's conduct caused the deaths of Saenz and Ramirez, the judgment of the court of appeals is reversed and judgment rendered that plaintiffs take nothing.[8]

**5.** Contrary to the dissent's statement, *ante* at 364 n. 8, the federal regulations to which GM repeatedly refers are cited not only by an amicus curiae but by *respondents* themselves.

**6.** In essence, the dissent argues that GM's warning must have caused the accident because it was inadequate. The dissent cites Jansen's and Stilson's testimony to show that the warnings did not specify all the consequences of overloading. All of this is beside the point. GM has not challenged the jury finding that its warning was inadequate. It contends that no inadequacy in the warning could have caused this accident when the warning that was given, had it been read and followed, would have prevented the accident. According to the dissent, if there is an inadequate warning and an accident, the two must be causally connected. This is not true in logic or law. Causation remains an element of liability, and it cannot be proved simply by proving that a warning was inadequate. If this were true, causation would not be an element of liability; proof of inadequacy would suffice. The inescapable fact in this case is that if the instructions GM gave had been followed, the accident would not have occurred.

**7.** The dissent argues that we should not address the legal sufficiency of the evidence to support a finding of causation because GM has not raised

the issue. In fact, GM has raised the issue, and has argued it extensively. The court of appeals addressed it specifically. 829 S.W.2d at 238. GM contends here:

> The [court of appeals] erred as a matter of law in holding that any warning inadequacy caused the injuries here, because undisputed evidence showed that no one read the warning and information that was given, ... any failure to warn could not have been the proximate or producing cause of the accident.

If all the evidence shows that GM did not cause the accident, no evidence shows that it did. This is precisely GM's point, and it is entitled to have it addressed.

**8.** The dissent begins with its usual inflammatory accusation—here, that the Court's purpose is no less than "the dismemberment of Texas consumer product safety law." *Post* at 362. This is, of course, untrue, as is the dissent's characterization of *Dresser v. Lee*, 1993 WL 433292 (Tex. 1993), as denying application of the law to people with limited educations or who work in hot, sweaty conditions. In *Dresser* we held that a product manufacturer is entitled to offer evidence that plaintiff's injuries were caused solely by his employer's misconduct, and this rule applies regardless of plaintiff's education or working conditions.

Dissenting Opinion by DOGGETT, J.

GAMMAGE, J., notes his dissent with opinion to follow.

SPECTOR, J., not sitting.

DOGGETT, Justice, dissenting.

Today's writing represents the next step in the dismemberment of Texas consumer product safety law. Having so recently declared that certain previous guarantees of that law are available neither to those Texans with limited education nor to those who labor under hot, sweaty working conditions, *Dresser v. Lee*, 1993 WL 433292 (Tex.1993),[1] the majority now eliminates a safeguard for another class of our citizens. No longer will our law offer comprehensive protection to a consumer provided an inadequate warning of product limitations. And since even this abrupt change is not enough to assure General Motors victory here, the majority must also resolve an issue never even raised in this Court.

## I.

The rule in Texas has long been that a manufacturer is required to provide an *adequate* warning, not simply *any* warning.[2] But the majority's destruction of our decisional law continues here with the discovery that the important safety presumption that a warning will be heeded no longer applies when any warning, no matter how inconspicuous or deficient, is given. Without explana-

tion or citation of authority, today's opinion simply omits a now inconvenient, but vital part of our writing in *Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832, 834 (Tex. 1986) (emphasis added):

> When a manufacturer fails to give *adequate warnings or instructions*, a rebuttable presumption arises....

Euphemistically declaring that this presumption "operates differently" for an inadequate warning, 873 S.W.2d at 359, the majority really means that the presumption no longer "operates" at all in this situation.

The requirement that manufacturers provide adequate warnings serves the dual goals of "risk reduction and the protection of individual autonomy in decision-making." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 96, at 685 (5th ed. 1984). In more plain terms, this means that individual Texans can often protect themselves, avoiding injuries and lawsuits, if sufficient information is provided in a conspicuous and comprehensible form. But

> a consumer-victim of a product should be able to recover if he was not *actually put on notice* of a risk or danger involved in the use of a product that *would be material to some users in making the choice* whether to accept the risk.

W. Page Keeton, *Products Liability—Inadequacy of Information*, 48 Tex.L.Rev. 398, 411 (1970).[3] To realize these policy goals of risk reduction and informed consumer choice, in

---

**1.** Offering a belated defense to its unfortunate writing in *Dresser*, the majority says its determination to weaken product safety law there was not limited to the poorly educated but "applies regardless of plaintiff's education or working conditions." 873 S.W.2d at 361 n. 8. But in that case, it was evidence that an employee labored in a "hot, dusty, improperly ventilated" workplace and had "only an eighth grade education" upon which the majority relied to conclude that such Texans would "not pay attention to warning labels." * p. 4. This same type of "elitist view that our safety laws should afford less security to the poorly educated," *id.* at * p. 9 (Doggett, J., dissenting), which permeates *Dresser*, has today been extended to eliminate another important legal guarantee previously available to Texas consumers.

**2.** *See General Chem. Corp. v. De La Lastra,* 815 S.W.2d 750, 754 (Tex.App.—Corpus Christi

1991), *aff'd in part, rev'd and remanded on other grounds,* 852 S.W.2d 916 (Tex.1993); *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 592 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Shop Rite Foods, Inc. v. Upjohn Co.,* 619 S.W.2d 574, 579 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.); *Pearson v. Hevi–Duty Elec.,* 618 S.W.2d 784, 787 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Lopez v. Aro Corp.,* 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.,* 518 S.W.2d 868, 873 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.).

**3.** *See also* William Kimble & Robert O. Lesher, Products Liability § 191, at 192 (1979) (adequate warnings are necessary because users of modern products may not understand and appreciate the way the products operate or the dangers inherent in their use).

Texas a warning is deemed legally adequate only when certain prerequisites are satisfied:

> (1) it must be in such form that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; (2) the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.... [Moreover], the question of whether a warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product.

*Bituminous Casualty Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 872–73 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.).[4] Hence the product warning requirement in our state is one that centers on reasonableness, not the type of never-to-be-fully-achieved state of warning perfection to which the majority derisively refers. 873 S.W.2d at 360–361. But a warning that fails to meet these reasonable criteria—"[a] warning which fails to call attention to the dangers[—]is, in effect, no warning at all." WILLIAM KIMBLE & ROBERT O. LESHER, PRODUCTS LIABILITY § 204, at 220 (1979); *see also Spruill v. Boyle–Midway, Inc.*, 308 F.2d 79, 87 (4th Cir.1962) ("[W]here the manufacturer is obligated to give an adequate warning of danger the giving of an inadequate warning is as complete a violation of its duty as would be the failure to give any warning.").

Nowhere does the majority explain its loss of faith in the policies underlying the legal mandate for adequate product warnings; nor does it provide any rationale for according differing treatment to warning deficiencies as distinguished from warning omissions. Instead, today's opinion only attacks its own self-created silly strawman—the unrealistic best and brightest warning—and simplistically announces that one cannot

> presume that [a] person would have heeded a *better* warning when, *in fact,* he paid no attention to the warning given.

873 S.W.2d at 359 n. 4. This contention ignores the requirement in Texas that, in order to be adequate, a warning must be sufficiently prominent to attract the attention of a reasonable user. The majority has not offered the slightest justification for eliminating the presumption when the cause of a victim having "paid no attention to the warning given" was a deficiency in the form and manner of the warning itself.

In discharging his burden of proving that GM's failure to provide an adequate warning was a producing cause of his damages, Saenz was rightly aided by the presumption described in *Magro:*

> [W]hen a manufacturer *fails to give adequate warnings* or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions.... This presumption may be rebutted with evidence that the user was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstance tending to show that the improper use would have occurred regardless of the proposed warnings or instructions.

721 S.W.2d at 834 (emphasis added). Instead of applying this presumption to the facts of this case, the majority derides Texas consumers as routinely failing to follow warnings. And rather short on authority for this approach, today's opinion relies solely on the old adage about leading a horse to water. While hardly a substitute for precedent, even this platitude is particularly unpersuasive here. When a consumer has not been provided adequate warnings of product dangers, he is not like a horse led to water that stubbornly refuses to drink; he is rather like a horse led nowhere and then blamed for being thirsty. I would not so callously disregard our prior rulings in favor of decision-making by cliche.

## II.

Essential to the result sought by the majority is its conclusory statement that "there is no evidence that the inadequacies in GM's warning caused the accident." 873 S.W.2d at 361. This declaration essentially provides

---

4. *See also De La Lastra,* 815 S.W.2d at 756; *Nowak,* 638 S.W.2d at 592.

GM a generous "no evidence" analysis that it has not requested.

In both its brief to the court of appeals and its motion for rehearing to that court, GM unequivocally urged a no evidence challenge to the jury finding of causation, which challenge was quite appropriately rejected. 829 S.W.2d at 238. Instead of renewing the same complaint to this Court, GM has offered only the contention that when any warning is given, failure to read it negates the causation element as a matter of law.[5] Today's opinion insists that it is not accepting this incredible argument by announcing that

> [a] warning which is not displayed with sufficient prominence to give reasonable notice to the persons to whom it is directed is hardly better than no warning at all.

873 S.W.2d at 360. And to be sure that has until now been our law. But if the majority is not embracing this sole GM causation argument, no other point of error in this appeal supports achieving today's predetermined result. Without an objection by GM in this Court to the legal sufficiency of the evidence underlying the jury finding of causation, the majority has no basis to "consider whether

there is any other evidence of causation to support the jury's verdict." Id.[6]

The jury was instructed that

> "Adequate warnings and instructions" means warnings and instructions that are given in such form that they could reasonably be expected to catch the attention of the reasonably prudent person in the circumstances of its use; and the content of the warnings and instructions must be of such a nature as to be comprehensible to the average user of the product and to convey a fair indication of the nature and extent of the danger, if any, and how to avoid it to the mind of the reasonably prudent person.[7]

The record contains evidence of deficiencies in the content of both the doorjamb warranty label, allegedly "placed in compliance with federal regulations," 873 S.W.2d at 361,[8] and the single related sentence in a lengthy owner's manual. Other than learning the gross vehicle weight and that the owner's manual contained additional loading information, all that one who did read the doorjamb label could learn is that:

---

5. GM's point of error is limited solely to a complaint that:

> The [court of appeals] erred as a matter of law in holding that any warning inadequacy caused the injuries here, because undisputed evidence showed that no one read the warnings and information that was [sic] given, so any failure to warn could not have been the proximate cause of the accident.

This is not a request for a "no evidence" review on causation of the type urged by GM in the court of appeals; it is a claim that GM cannot be held legally responsible for any deficiency in a warning, which was not read, even when evidence challenging that warning's adequacy is offered.

6. GM has not presented a "no evidence" argument in this Court as to either duty or causation. For some inexplicable reason, this is a significant factor to the majority in its analysis of duty but not of causation. The majority's reaction to this procedural failure by GM also contrasts sharply with the reaction not only of this Court in *De La Lastra*, 852 S.W.2d at 922 n. 9, but also of the dissent:

> The jury found that the warning label was inadequate because it did not expressly state that the toxic gas produced by misuse of the product could be fatal … [and] that this inad-

equacy in the label caused the De La Lastras' deaths. General Chemical … has not raised those challenges in this Court. Consequently, the inadequacy of the warning label must be taken as an established fact.

*Id.* at 926 (Hecht, J., dissenting in part).

7. This instruction was a near verbatim version of that recommended by 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.06 (1990).

8. Though GM makes occasional vague reference in its briefing to federal regulations, the sole reference to the regulations upon which the majority relies, 49 C.F.R. §§ 567.4(c) and 567.5 (1972), (1991), comes not from GM, but the amicus Product Liability Advisory Council, Inc. Today's opinion simply adopts this group's word as the gospel. Just as this majority requires no appellate point of error to accomplish its mischief, it also needs no trial court record; a friendly amicus will suffice.

Moreover, the mere fact that the spot chosen satisfied a federal regulation does not insulate a party from liability for failing to provide an adequate warning. *See Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978) (holding that warning on a drug package insert approved by the FDA was inadequate).

WARRANTY MAY BE VOIDED IF WEIGHT EXCEEDS ANY OF THE RATINGS SHOWN.[9]

GM's representative at trial, engineer Carl Jansen, reluctantly conceded that neither the label nor the safety caution reference in the owner's manual were adequate to convey the serious danger of overloading. He indicated that the comment in the owner's manual upon which the majority today places much weight would not even qualify as a "caution label" by GM's own labeling procedure. His testimony concerning content deficiencies alone, contrary to the majority's assertion, "suggest[s] why the warning GM gave was not sufficient to give reasonable notice against overloading." 873 S.W.2d at 361:

Q: Now, does this meet the requirement that—the message that you're trying to say? Does it explain why these instructions should be followed?

A: Not specifically, no.

Q: All right. In other words, it doesn't tell people what could happen if you do overload, correct?

A: That's correct, it does not.

Q: And the message also does not relate to the possible consequences if these instructions are not followed, correct?

A: There are no specific—no specific information like that, that is correct.

Agreeing as to these failings by GM, John Stilson, an engineer retained by Saenz, added that the GM "warning" "d[id] not conform to a standard of the American National Standards Institute" (ANSI) published in 1968. Nor did GM conform with the legal standard set forth so recently by this Court in *General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916, 922 n. 9 (Tex.1993), *cert. dismissed* — U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993) (noting that a jury finding that a warning is inadequate was proper where the warning failed to alert of the potentially seri-

ous effects—namely death—that could result from misuse of a chemical).

Further evidence also demonstrated that the reason that the GM notice went unread was a deficiency in the placement and prominence of the notice itself. Among this evidence which the majority simply wishes away is that of a representative of the manufacturer, which added the water tank to the truck, who testified that this particular modification would not have been made had a more conspicuous warning been provided. Multiple witnesses—a DPS investigator, a mechanical engineer hired by the manufacturer which added the water tank, and two of that manufacturer's employees—indicated that they personally observed no warning on the vehicle about the dangers of overloading. Under our previous law a warning could be found inadequate either because of its content or its lack of conspicuity or a combination of the two. As the court in *Spruill v. Boyle–Midway, Inc.*, 308 F.2d 79, 87 (4th Cir.1962), concluded in upholding the responsibility of a product manufacturer for the death of a child despite the mother's failure to read an inadequate warning:

[H]ad the warning been in a form calculated to attract the user's attention, due to its position, size, and the coloring of its lettering, and had the words used therein been reasonably calculated to convey a conception of the true nature of the danger, this mother might not have left the product in the presence of her child. Indeed, she might not have purchased the product at all, a fact of which the manufacturer appears to be aware. Having deprived the mother of an adequate warning which might have prevented the injury, it cannot be permitted to rely upon a warning which was insufficient to prevent the injury.

The jury was entitled to conclude from all of this evidence, as well as all of the circumstances of the accident, that any warning was

---

**9.** John Stilson, a safety and automotive consultant retained by Saenz, testified that

this information conveys to a user that they might have a warranty problem. Warranty meaning that if you overload the vehicle, your components are going to wear out faster. You're going to come back to the manufacturer, and you're going to replace the part under

a warranty plan for potentially no cost. So the warranty issue is definitely spelled out in here in terms of that aspect.

But the safety consequences, the risk, possible consequences if these instructions are not followed. *The safety risk to personal injury is not spelled out in any of these documents that I see.*

not "in such form that [it] could reasonably be expected to catch the attention of the reasonably prudent person in the circumstances of its use" and that it did not "convey a fair indication of the nature and extent of the danger, if any, and how to avoid it." Unquestionably, there was legally sufficient evidence to support a conclusion that GM's failure to provide an adequate warning was a producing cause of the accident.[10]

### III.

Equally bizarre is the way today's opinion addresses a product manufacturer's duty. Consider the opening and conclusion of that part of the writing:

We first consider whether the court of appeals correctly held that GM violated a duty to warn against overloading its truck. . . . GM does not argue that the evidence is legally insufficient to show a breach of its duty to warn. Accordingly, we conclude that the court of appeals did not err in holding that GM breached that duty.

873 S.W.2d at 356.[11] Apparently the only purpose of this discussion is to modify Texas law through dicta regarding those products specifically designed for subsequent modification. The rule the majority recommends is set forth in *Verge v. Ford Motor Co.*, 581 F.2d 384 (3rd Cir.1978), a decision that has been followed only twice in Texas during the last twenty-five years.[12] Even if correct, this rule, as the court of appeals has ably explained, is inapplicable to the facts of this case. *See* 829 S.W.2d at 235–36.[13] A jury found GM breached its duty; the trial court entered judgment, and the court of appeals affirmed. Moreover, this writing is entirely unnecessary to what we have been asked to decide here. All this exposition by the majority accomplishes is to inform GM of the argument it *should have* made in order for the majority to reach the conclusion it really desired—that GM had no duty.

### IV.

And so the majority once again pens more answers than the parties have proper questions. Today's opinion has effectively resolved whether a warning is adequate as a question of law that only judges can decide.[14] Instead of competent legal analysis, the majority substitutes itself for the jury in quali-

---

10. Distancing itself from this reality, the majority mischaracterizes this "dissent [as] argu[ing] that GM's warning must have caused the accident . . . [and foolishly arguing that] if there is an inadequate warning and an accident, the two must be causally connected." 873 S.W.2d at 361 n. 6. Of course, "[c]ausation remains an element of liability, and it cannot be proved simply by proving that a warning was inadequate." *Id.* I maintain only that there was legally sufficient evidence in this record, which the majority deliberately ignores, to support the jury finding that an inadequacy in the GM warning constituted a producing cause of two deaths. *See, e.g., Firestone Tire & Rubber Co. v. Battle*, 745 S.W.2d 909, 913–14 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (upholding jury finding based upon expert testimony that inadequate warning was a producing cause of an accident).

11. Had the majority been consistent in its analysis, it would have reached this same conclusion regarding causation. Since GM also did *not* argue that the evidence is legally insufficient to show *causation*, the majority *should have* concluded that the court of appeals did not err in holding that there was sufficient evidence of causation.

12. *See Elliott v. Century Chevrolet Co.*, 597 S.W.2d 563 (Tex.Civ.App.—Fort Worth 1980,

writ ref'd n.r.e.); *Trevino v. Yamaha Motor Corp.*, 882 F.2d 182 (5th Cir.1989).

13. Indeed, a careful review of *Verge* indicates its inapplicability. While the manufacturer there was not held liable, the court noted that a manufacturer of a product designed for subsequent modification could be held liable if there were "evidence from which the jury could have found that one [missing] safety device could be installed for all uses of the machine." 581 F.2d at 389. That is precisely the situation here—overloading is a danger for virtually all uses of the cab and chassis, and GM had the ability, but failed, to provide an adequate warning as to that general danger.

14. The majority writes that we have previously held that "*the jury [is] free to conclude* from [an] admission [that the plaintiff has not read a label on a product] that plaintiff would not have read the label if it had contained [an adequate] warning." 873 S.W.2d at 357 (citing *Technical Chem. Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972)) (emphasis added). If *Technical Chemical* requires that the jury decide causation where an inadequate warning goes unread, then why does the majority today take the causation issue away from the jury?

tatively evaluating the evidence and declaring that placement of a doorjamb label afforded a quite ample warning. 873 S.W.2d at 360–361. With this type of approach, the previously applicable Pattern Jury Charge can be tossed in the scrap heap. *See* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.06 (1990). The majority has engaged in a series of wordgames to achieve its desired result; in no way has it accorded the parties an impartial review of the properly presented points of error. According to the jury, two Texans are dead as a consequence of a manufacturer's failure to warn; according to the majority, a little more Texas consumer product safety law is now dead too, as our right to trial by jury ebbs away.[15]

GAMMAGE, Justice, dissenting.

The vehicle—truck tractor—involved in the accident had been modified so many times after it left General Motors' hands that I cannot agree that it had a duty to warn of all the potential dangers arising form all the ways in which its product might be modified or used. Had General Motors properly preserved error by advancing a point to this court urging that *under the facts of this case,* the evidence does not raise a duty to warn beyond what it actually had, then I would agree with the judgment of the court, though not the majority's reasoning. Since General Motors failed to argue there was *no evidence* to raise the duty to warn under the circumstances of this case, I am unable to agree even with the judgment. For these reasons, I respectfully dissent.

The majority and Justice Doggett's dissent agree that General Motors failed to preserve the issue which I would find persuasive in General Motors' behalf. The main fallacy in what the majority does write concerning causation is found in these assertions:

If despite the inadequacy of GM's instructions, following them would have prevented the accident, then their inadequacy could not have caused the accident. There is no presumption that a plaintiff who ignored instructions that would have kept him from injury would have followed better instructions.

873 S.W.2d at 355. By this language the majority erroneously assumes the only defect a warning may have is the quality of the "instructions" contained in the warning. That simply is not the law. Without precluding other possible defects, the warning may be inadequate because it is not sufficiently **conspicuous.** Conspicuousness is an element in this case because, regardless of the quality of the warning here, we cannot know whether it would have been noticed and followed were it not buried in the owner's manual or placed with some inconspicuous notation on the doorplate. Conspicuousness, however, simply does not equate to quality of content. There is no justification for ignoring the presumption that a proper warning, had it been given, would have been followed.

I sympathize with the majority's desire to hold that General Motors is not liable under the facts of this case because it had no duty to guess successfully all the modifications and abuses to which its product might be subjected. Its duty to warn was too attenuated under the particular facts here to require it to warn of the ultimate modified vehicle to which the accident occurred. But we should be honest and admit that since it failed to preserve that ground, its alternative contention is legally unsound. General Motors did not disprove causation as a matter of law, and the majority errs in holding it did.

**15.** *See, e.g., Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 459–67 (Tex.1993) (Doggett, J., concurring and dissenting); *Boyles v. Kerr,* 855 S.W.2d 593, 609–10, 616 (Tex.1993) (Doggett, J., dissenting); *May v. United Serv. Ass'n of America,* 844 S.W.2d 666, 675 (Tex. 1992) (Doggett, J., dissenting); *Leleaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 55–56 (Tex.1992) (Doggett, J., dissenting); *Crim Truck & Tractor v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591, 599 (Tex.1992) (Mauzy, J., dissenting); *Reagan v. Vaughn,* 804 S.W.2d 463, 491 (Tex.1991) (Doggett, J., concurring and dissenting); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 527 (Tex.1990) (Doggett, J., dissenting).