IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00262-CR

 

Michael Anthony Lopez,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 06-00154-CRF-361

 



ABATEMENT ORDER










 

            Michael Lopez was charged with
murder.  He was found guilty and punishment was assessed at 75 years in
prison.  Lopez appealed.

            Lopez filed his notice of appeal with
the trial court on August 11, 2006.  The reporter’s record was due September
19, 2006.  See Tex. R. App. P.
35.2.  On November 7, 2006 the Clerk of this Court notified the official
reporter of the 361st District Court that the reporter’s record had not been
filed.  The Clerk requested the filing of the record within 30 days and if the
reporter’s record could not be filed within that time, to notify the Court
immediately.  We received no response from the reporter.  

            On December 18, 2006 the Clerk of this
Court notified the official reporter again that the reporter’s record had not
been filed, that the reporter had been notified on November 7, 2006, that the
reporter’s record was due within 30 days, and that the reporter did not respond
to the notification.  The Clerk requested the reporter to contact the Court
within 10 days.  The Clerk warned that if the reporter did not respond within
10 days from the date of the letter, the matter would be referred to the
Court.  See Tex. R. App. P.
35.3(b) and 37.3(a).  We received no response from the reporter.

            On February 22, 2007 and because
multiple records by this particular reporter were overdue, the Clerk of this
Court requested the assistance of the trial judge in getting numerous records,
including the record in this appeal, filed.  A list of the overdue records was
included in body of the letter.   The reporter responded that the record in
this appeal would be forwarded to the Clerk “within the next two months.”  The
record was never filed.  

            On July 17, 2007 the Clerk of this
Court requested the reporter to immediately inform the Court as to the date the
overdue records, including the record in this appeal, would be filed.  A
spreadsheet of the overdue records was included with the letter.  We received
no response from the reporter.  

            The reporter’s record is now 13 months
overdue.  And this is not the only appeal of a criminal conviction which has
come to a standstill because of this reporter.  See Jimenez v. State,
No. 10-07-00056-CR, 2007 Tex. App. LEXIS _____ (Tex. App.—Waco Nov. 14, 2007,
order) (published); Montgomery v. State, No. 10-07-00080-CR (Tex. App.—Waco Nov. 14, 2007, order) (not designated for publication); Yarbrough v. State, No.
10-06-00328-CR (Tex. App.—Waco Nov. 14, 2007, order) (not designated for
publication).  The location of the reporter was unknown to us for a period of
time.  See Hot Rod Hill Motor Park v. Triolo, No. 10-06-00092-CV
(Tex. App.—Waco Oct. 10, 2007, order) (not designated for publication). 
Further, as a result of an abatement and hearing, the location of the reporter
has recently become known to us.  See id.  

            Though we might prefer to reverse and
remand this criminal proceeding due to this delay, the Court of Criminal
Appeals requires more than just numerous unsuccessful efforts to obtain the
reporter’s record.  Johnson v. State, 151 S.W.2d 193 (Tex. Crim. App.
2004).  Specifically, before we can reverse the judgment of the trial court and
remand this proceeding for a new trial, “the appellant must show (1) that a
significant portion of the record was lost or destroyed, (2) through no fault
of [his] own, (3) that the missing portion of the record is necessary to [his]
appeal, and (4) the parties cannot agree on the record.”  Routier v. State,
112 S.W.3d 554, 570 (Tex. Crim. App. 2003).  We also note that “a court
reporter’s notes and records, or portions thereof, can be considered ‘lost’
only if the missing portions of the appellate record are irretrievable.”  Johnson
v. State, 151 S.W.2d 193, 196 (Tex. Crim. App. 2004).

            We have determined that the trial
court is in a better position to make the evidentiary record and determination
of the four elements required by Routier before a new trial can be
granted.  Accordingly, we abate this proceeding to the trial court for a
determination of these issues.  See Kirtley v. State, 56 S.W.2d
48, 52 n.3 (Tex. Crim. App. 2001) (“The Court of Appeals should begin with a
determination as to which court should conduct the remaining Rule 34 analysis.
If the appellate court finds that such analysis is best done by the trial
court, it may remand the case accordingly.”).

            The trial court shall:  1) conduct a
hearing within 21 days from the date of this Order; and 2) prepare and tender
to the trial court clerk written findings of fact and conclusions of law and a
signed, written order consistent with this Order within 28 days from the date
of this Order.  The trial court shall also take whatever actions it deems
appropriate, including holding the reporter in contempt until the record has
been filed, to ensure that if it can be prepared, the record or any part of it
is prepared and delivered to the trial court within 14 days of the date of the
hearing.

            The trial court clerk shall prepare
and file a supplemental clerk’s record containing a copy of the trial court’s
findings of fact and conclusions of law and the trial court’s written order
with the Clerk of this Court within 35 days from the date of this Order.

            The current official reporter of the
trial court shall prepare and file a supplemental reporter’s record of the
abatement hearing with the Clerk of this Court within 35 days from the date of
this Order.  

 

                                                                                    PER
CURIAM

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Appeal
abated

Order
issued and filed November 14, 2007

Do
not publish

[CR25]






rds a result does little to assist me in determining if
the majority has properly applied the standard of review or, for that matter,
whether the majority reached a result supported by the law.  In the Interest
of S.A.P., 169 S.W.3d 685, 712 (Tex. App.—Waco 2005, no pet.)(op. on remand)(Gray,
C.J., dissenting).  This has forced me to conduct my own analysis of the record. 
I find the trial court’s judgment is supported by factually sufficient evidence
under the standard of review articulated in J.F.C.  In the Interest
of J.F.C., 96 S.W.3d 256, 266-267 (Tex. 2002)

          One thing I believe the majority has
confused is a presumption that the best interest of the child is to be with its
parents, with evidence.  When evidence, in a termination case clear and
convincing evidence, contrary to the presumption is introduced, the presumption
vanishes and we are left with the duty to review the evidence upon which the fact
finder made its determination.  “A presumption is not evidence but rather a
rule of procedure or an ‘administrative assumption’ which ‘vanishes’ or is ‘put
to flight’ when positive evidence is introduced.  It is not evidence, and when
met by rebutting proof, it is not to be weighed by the jury or treated by the
jury as evidence in arriving at a verdict.  Strain [v. Martin],
183 S.W.2d [246,] at 247 [(Tex. App.—Eastland 1944, no writ)].”  Appellant’s
brief, pg. 22.  The vanishing presumption language the Eastland Court quoted
was taken from a 1940 Texas Supreme Court case which has been cited by the Supreme
Court for that proposition as late as 1993 and followed by this Court in 1975. 
Empire Gas & Fuel Co. v. Muegge, 143 S.W.2d 763, 767-768 (Tex. 1940); see General Motors Corp. v. Saenz ex rel. Saenz, 873 S.W.2d 353,
359 (Tex. 1993); H. E. Butt Grocery Co. v. Bruner, 530 S.W.2d 340, 344
(Tex. App.—Waco 1975, writ dism’d by agr.).  The majority has already
determined that clear and convincing evidence contrary to the presumption was
introduced by holding the evidence legally sufficient. But the majority continues
to put great weight on the presumption, even after clear and convincing evidence
to the contrary was introduced.

          I also question upon what evidence the
majority’s determination of legal sufficiency is actually based.  After dumping
a huge volume of evidence into the opinion for the reader to struggle through,
they set out in a single application paragraph their determination of legal
sufficiency.  The only evidence referenced in this paragraph is the testimony
of two CPS witnesses, Hays and Grohoske.  It appears this may be the only
evidence considered in their legal sufficiency review.  This is not what J.F.C.
instructs us to consider in conducting a legal sufficiency review.  But, again,
because of the manner in which the majority has presented the analysis, I am
unable to determine if they reviewed the evidence properly, or only sought some
evidence that would support the fact finder’s determination that termination
was in the best interest of the children.

          In addition to clarifying the manner
and scope of our review, this case may also present the opportunity to address
whether, when a heightened burden of proof is in place:

1.     
Do we need a factual
sufficiency review in addition to a legal sufficiency review.  See Johnson v.
State, 23 S.W.3d 1, 15 (Tex. Crim. App. 2000)(McCormick, P.J., dissenting);
Clewis v. State, 922 S.W.2d 126, 156 (Tex. Crim. App. 1996)(McCormick,
P.J., dissenting).  But see Southwestern Bell Telephone Co. v. Garza,
164 S.W.3d 607, 621 (Tex. 2004).

 

2.     
Because there are
constitutional issues presented, is the proper standard a redetermination of an
element or the ultimate issue by a de novo determination after an evaluation of
all the evidence.  See In re C.H., 89 S.W.3d 17, 29 (Tex. 2002)(Hecht,
J., concurring).

 

3.     
Can we determine the
evidence was not factually sufficient and, in effect, grant a continuance which
defeats the purpose of the deadline in the statute, notwithstanding that
legally sufficient evidence supports the determination that termination is in
the best interest of the children.

 

I could spend many more days on this case, but
because there will undoubtedly be further proceedings, and the childhood of
these children is quickly passing – I will hand this case off, with my dissent,
to the next court, hopefully a court with more resources to properly address
all the issues necessary to a proper disposition of this appeal.

But I cannot let this case pass without
commenting on what we, this Court, cannot fix.  It is this parent’s dependency. 
The dependency to which I refer is not on illegal drugs but on the State and
its support system.  The State support system is delivered when Barbara is in
dire need.  She has historically responded well when she is in a very
controlled environment, like prison.  Just about the time she regains control
of her life with the support structure provided by the State – housing – child
care – medical care – counseling – etc. – she loses State assistance.

With the loss of State assistance, she slides
into economic problems, hastened along by a bad relationship with a
non-supportive man.  The result, in cycles over the last 20 years, has been
depression, a sense of becoming overwhelmed, and a return to cocaine as an
escape.  This is then followed by another dose of State support.  And the cycle
starts over, again.

Currently the statutes are structured so that
after some number of these cycles we, as a society, leave the mother to live
with the future consequences of her past decisions.  At that point, we also
endeavor to save the child from having the result of its future determined by
the result of the parent’s past decisions.  It is not a perfect system.  It is
probably not even a good system.  We know there are serious flaws with it.  But
upon this record, I believe the trial court properly determined that the best
future for these two children was through what the State could provide if the
parental rights were terminated, rather than risking their future to see if
this last, brief, recent effort by the mother for rehabilitation of her own
life, was going to continue indefinitely into the future – when no program she
had tried in the last 20 years had the result for which we all hope.  The
question is not, as was clearly the defense strategy, whether to give the
mother one more chance.  The question is whether those who have been charged
with the protection of these children are correct in determining we can no
longer risk their future to the mother, and must, in the best interest of the
children, give the State the obligation to deliver to them a future better than
what their mother is currently capable.  This stability and prospect for the
future is the compelling State interest which justifies the interference of the
government with the parent-child relationship.  See In the Interest
of S.A.P., 169 S.W.3d 685, 707 (Tex. App.—Waco 2005, no pet.)(op. on remand);
Dupree v. Texas Dep't of Protective & Regulatory Servs., 907 S.W.2d
81, 87 (Tex. App.—Dallas 1995, no pet.).

The trial court, acting as the fact finder, made
a determination that is fully supported by the record, a fact finding that
should be upheld under the applicable standard of review.  Because the majority
reverses the judgment of the trial court, I dissent.

 

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed February 23, 2006