**Opinion issued August 30, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-10-01119-CV**

———————————

**LARRY TIDWELL AND NANCY TIDWELL, Appellants**

**V.**

**TEREX CORP., TEREX CRANES INC., AND KOEHRING CRANES INC.,
Appellees**

---

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 29356**

---

**MEMORANDUM OPINION**

Larry Tidwell and his wife Nancy Tidwell sued Terex Corporation, Terex

Cranes Inc., and Koehring Cranes Inc. (Terex) after Tidwell was injured in an

accident in which he was thrown from a Terex RT230 crane. After a seven-day

trial the jury found no liability on the part of Terex and the trial court entered a take nothing judgment. On appeal, the Tidwells contend that the evidence is legally and factually insufficient to support the jury's findings that neither a design defect nor a marketing defect was a producing cause of the accident and that Tidwell was seventy percent responsible for the accident. The Tidwells also contend that the trial court erred in (1) failing to include the Tidwells' proposed jury instruction in the charge, (2) admitting the testimony of Terex's expert witness and, (3) excluding evidence of a subsequent remedial measure and a similar incident. We affirm.

## Background

At the time of the accident, Tidwell, an employee of TNT Crane and Rigging, Inc., worked as a crane operator. One evening, Tidwell was assigned to perform a lift using a Terex manufactured RT230 crane. Before making the lift, Tidwell inspected the crane, checking items identified on a Daily Crane Inspection Report created by TNT (TNT Checklist). The TNT Checklist did not refer to or suggest checking the crane's Axle Oscillating Lockout System (AOLS), which a later investigation showed was disabled. As Tidwell was performing tests of the crane, he stepped outside the cab to remove debris from underneath a pedal. The

2

crane tipped over, and Tidwell was thrown approximately fifteen feet.  He landed on cement and suffered a broken leg and injured his neck and brain.

## The Terex RT230

The Terex RT230 was manufactured by Terex and rented by Tidwell's employer, TNT.  The crane lifts items with its boom, a long metal protrusion that extends from the crane vertically and can be positioned at different angles.  The crane can operate on its four tires alone, but it also is equipped with a system of outriggers and stabilizers that can be used to steady the crane when lifting.  Operating on only tires is also referred to as operating "on rubber."  According to the RT200 Series Operator and Maintenance Manual (Operator Manual), if a crane operator makes a lift while operating only on its tires without outriggers, precautions should be taken to prevent the load from swinging and causing "machine tip over."  These precautions include setting the swing break and swing lock and avoiding sudden starts or stops.  At the time of the incident, Tidwell was not making a lift, but was operating on tires without the additional support of outriggers.  Experts offered conflicting testimony at trial about whether the swing brake was set when the accident occurred.  Tidwell testified that he did not remember whether he set it before the accident.

A separate mechanism, the crane's AOLS, also helps to stabilize the crane by keeping the rear tires on the ground when moving over rough terrain or moving the boom from the center position. The parties agree that the AOLS was not connected at the time of the incident. Witnesses for both the Tidwells and Terex testified that the AOLS appeared to have been disconnected for about thirty days before the accident.

## Terex's Operator Manual

While TNT provided Tidwell with the TNT Checklist, Terex provided the ten-chapter Operator Manual with the crane. The Operator Manual instructed the reader to "read and understand the manuals provided with this equipment." Likewise, on page 1-1, under "Tips on Safe Operation," the Operator Manual stated: "Familiarity with the crane is a prerequisite of safe operation. Before putting your crane to use, both operators and maintenance personnel should read and be thoroughly familiar with this manual and all additional publications supplied with the crane . . . ."

The Operator Manual contained two checklists: a "Suggested Rough Terain [sic] Crane Inspection Check List" (Rough Terrain Checklist) and a "Machine Maintenance Check List" (Maintenance Checklist). The latter identified items that required periodic checks and specified whether they should be checked daily,

monthly, or yearly. Although neither checklist instructed the user to check the AOLS, the "Service and Adjustments" section of the Operator Manual (Service and Adjustments Section) instructed the user to check the AOLS daily when operating on rubber. It stated:

> For safe operation of the crane when operating on rubber, the axle lockout valve should be checked daily as follows:
>
> 1. Place the boom in travel position.
> 2. Drive one tire of the rear (oscillating) axle up on an eight inch block.
> 3. Swing the retracted unloaded boom approximately 20 degrees from the center position.
> 4. Drive the crane off the block. If the tire remains in the up position proceed with step (5). If the tire does not remain in the up position readjust or replace the lockout valve.
> 5. Allow crane to set for three to five minutes.
> 6. Observe the tire, it should remain in the up position.
> 7. Swing the crane back to the center position. The tire should return to its original position. If not readjust or replace the lockout valve and repeat this procedure.

At trial, the Tidwells argued that these instructions were insufficient. The Tidwells' expert, Kenneth Laughery, testified that Terex's instructions regarding the inspection of the AOLS were inadequate and an instruction to check the AOLS and warning of the dangers of failing to do so should have been placed in the first three chapters of the Operator Manual and, more specifically, on the Rough Terrain Checklist, which was on the fifth page of the Operator Manual. He

5

claimed that the failure to place a clear instruction regarding the necessary AOLS checks in a prominent location was a marketing defect that was a producing cause of the accident. Laughery admitted that Tidwell was not using the Rough Terrain Checklist on the day of the incident but testified that employers of crane operators usually create their own checklists and use a manufacturer's manual to determine what to put on their own checklists.

The month after Tidwell's accident, Terex amended its Operator Manual to include instructions to check the AOLS on both the Rough Terrain Checklist and Maintenance Checklist.

**Tidwell's Operation of the Crane on the Day of the Accident**

At trial, Terex argued that Tidwell's actions were the cause of the accident. Specifically, Terex argued that Tidwell caused the accident by failing to check the AOLS and failing to set the swing break or outriggers. Terex presented testimony of two crane operators who testified that they would know to check the AOLS when operating on tires as Tidwell was doing on the day of the accident. Testimony at trial also showed that Tidwell rode the crane in a rough manner and that his decision to get out of the cab without setting outriggers could have been a cause of the accident. Terex presented testimony from crane operator James Headley Jr. who testified that if Tidwell had left the outriggers out while cleaning

6

the cab, the accident would not have occurred. Headley also testified that operating on tires without the assistance of outriggers was not a common practice.

The Tidwells' expert Donald Jordan also testified about the possible causes of the accident. Jordan testified that if Tidwell had set the swing brake the accident would not have occurred. But he also stated that he had tested an identical crane after the accident and found that, when the AOLS was in place, there were no stability issues even without the swing brake. Jordan testified that a daily AOLS check by the operator was not industry standard at the time of the accident.

## Jury Verdict

The Tidwells initially pleaded a negligence claim and strict liability claims of design defect and marketing defect. However, at the charge conference, the Tidwells did not request submission of their negligence claim to the jury. The jury found that there was no design defect that was a producing cause of the accident, no marketing defect that was a producing cause of the accident, and that Tidwell was a proximate cause of the accident. The jury erroneously answered the questions relating to proportional responsibility and damages; it attributed seventy percent responsibility to Larry Tidwell and awarded Tidwell zero damages. The

7

trial court disregarded the jury's immaterial findings on these issues and entered a take nothing judgment. The Tidwells appealed.

## Sufficiency of the Evidence

### A.    Standard of Review

When the party who had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, i.e., as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing the jury's verdict for the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

When a party who had the burden of proof complains of the factual insufficiency of an adverse finding, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We weigh all the evidence and set aside the adverse finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

**B.      Design Defect**

In their third issue, the Tidwells argue that the evidence is legally and factually insufficient to support the jury's finding that there was "no defect in the crane at the time it left possession of the defendant." They claim that the undisputed evidence shows the AOLS was not working when the accident happened, and that it is undisputed that the accident would not have happened if it had been.

**1.      Applicable Law**

To prove a design defect, the Tidwells had to show that (1) there was a safer alternative design; (2) the safer alternative design would have prevented or significantly reduced the risk of injury, without substantially impairing the product's utility; and (3) the safer alternative design was both technologically and economically feasible when the product left the control of the manufacturer. TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a)–(b) (West 2011); *see Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999); *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 477 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The Tidwells had the burden of demonstrating by a preponderance of the evidence that "the safety benefits from [their] proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety"—that is,

9

that the alternative design not only would have reduced the risk of harm in the instant case, but also would not, "under other circumstances, impose an equal or greater risk of harm." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998). Thus, the Tidwells had to prove that an economically and technologically feasible alternative to the AOLS was available and would have prevented or significantly reduced the risk of Tidwell's injury without substantially reducing the utility to the "intended users" of the product. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 258 (Tex. 1999). If no evidence is offered that a safer design existed, a product is not unreasonably dangerous as a matter of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 433 (Tex. 1997).

Question 1 asked the jury: "Was there a design defect in the crane at the time it left the possession of the defendant that was a producing cause of the occurrence in question?" The charge defined a design defect as "a condition of the product that renders it unreasonably designed, taking into consideration the utility of the product and the risk involved in its use." The charge also stated that for there to be a design defect there needed to be a "safer alternative design," which it defined as a product other than the one used that in reasonability probability "would have prevented or significantly reduced the risk of occurrence in question without substantially impairing the product's utility" and "was economically and

10

technologically reasonable at the time that product left control of the defendant by the application of existing or reasonably achievable scientific knowledge."

### 2. Analysis

At trial, the Tidwells' expert Jack Madeley testified that the crane contained at least six design defects that were producing causes of the accident. They were: (1) the placement of the AOLS underneath the crane, which made it less accessible to operators, (2) the design of the AOLS, which allowed it to be completely disabled, (3) the absence of a warning light to tell the operator whether the AOLS was disabled or working, (4) the absence of an indicator painted on the fender to aid the operator in determining the angle at which he is swinging his crane, (5) the absence of a "redundancy system," that could perform the same function as the AOLS if the AOLS stopped working, and (6) the absence of a "fail safe" system which would have provided for safe positioning of the crane if something broke while the crane was operating. With the exception of the warning light, Madeley offered no testimony describing the economic feasibility of any of his design alternatives. Because the Tidwells failed to offer evidence of the economic feasibility of their proposed alternative designs for five of the six purported design defects, with respect to these alleged design defects, the Tidwells have failed to demonstrate that the evidence establishes conclusively, i.e., as a matter of law, all

vital facts in support of the finding they sought. *See Uniroyal*, 977 S.W.2d at 339 (holding some evidence of feasible alternative design is not conclusive evidence of unreasonably dangerous product when there was no evidence as to effect of production cost or change in ease of use product).

Although Madeley provided evidence as to the economic and technological feasibility of one of the six alleged design defects—the failure to include a warning light—there was conflicting evidence on this point. Madeley testified that the cost to install the system would be $800 per crane, and that other crane companies utilize a warning system. In response, Terex's expert Bradley Closson testified that no manufacturers of rough terrain cranes with automatic operating systems have a warning light installed on the cranes. Closson also testified that the light would not provide a safer product because it would only tell the user whether the AOLS was on or off. According to Closson, the presence of the light could provide the operator with a false sense of security because the light would indicate only whether the AOLS was on or off, but not whether it was functioning properly. Viewing the evidence in the light most favorable to Terex, we conclude that the evidence was legally sufficient to support the jury's finding that there was no design defect that was a producing cause of the incident. *See Aqua-Flo, Inc.*, 23 S.W.3d at 478 (evidence sufficient to uphold directed verdict for defendant in

design defect case when plaintiff failed to offer testimony of economic feasibility of an alternate design of hot tub pump).

In addition, with respect to the Tidwells' factual sufficiency challenge, having weighed all of the evidence in favor of and against the jury's finding, we conclude that the jury's negative finding in response to Question 1 is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242; *Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 210 (Tex. App.—Waco 2009, no pet.) (affirming jury finding of no design defect even though plaintiff offered expert testimony about proposed safer alternatives because jury was free to disbelieve plaintiff's expert) (citing *Uniroyal*, 977 S.W.2d at 338).

We overrule the Tidwells' third issue.

## C.  Marketing Defect

In their fourth issue, the Tidwells contend the evidence was legally and factually insufficient to support the jury's finding that there was no marketing defect that was a producing cause of the accident.  The Tidwells argue that the seven-step instruction for the recommended daily check of the AOLS in the Service and Adjustments Section of the Operator Manual did not constitute a warning as a matter of law.  Specifically, they argue that the instructions were not

13

prominent enough to constitute a warning, were not comprehensible to the average user, and did not specify that there was a risk of crane tip over. The Tidwells claim they were entitled to a presumption that Tidwell would have heeded any warning, had one been included in the Operator Manual, and that the evidence is legally and factually insufficient to support the jury's negative response to Question 2.

### 1.    Applicable Law

To recover under a marketing defect claim, a plaintiff must establish that:

> (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product; (2) the product supplier actually knows or reasonably foresees the risk of harm at the time the product is marketed; (3) the product possesses a marketing defect; (4) the absence of the warning or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn causes the product user's injury.

*Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 578 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305–06 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)).

Question 2 asked: "Was there a marketing defect in the crane at the time it left the possession of the defendant that was a producing cause of the occurrence in question?" The charge defined a marketing defect as "the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure

14

to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous." The charge defined adequate warnings and instructions as:

> warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

The charge also provided that there could be more than one producing cause and it defined producing cause as a "substantial factor in bringing about the occurrence, and without which, the occurrence would not have occurred."

"When a manufacturer fails to give an adequate warning or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions." *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1986). This presumption "may be rebutted with evidence that the user [of the product] was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstance tending to show that the improper use would have occurred regardless of the proposed warnings or instructions." *Id.* Once a defendant has offered evidence of circumstances tending to show that no warning would have been heeded, an issue arises which can be resolved only by the finder of fact. *Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750,

15

753–54 (Tex. 1993) (if defendant offers evidence tending to rebut presumption that plaintiff would have heeded warning had one been given, whether plaintiff would have heeded any warning is conflict to be resolved by jury).

If the manufacturer provides a warning, "no presumption arises that a plaintiff would have heeded a better warning when, in fact, he did not read the warning given, which if followed would have prevented his injuries." *Stewart v. Transit Mix Concrete & Materials Co.*, 988 S.W.2d 252, 256 (Tex. App.— Texarkana 1998, pet. denied) (citing *Gen. Motors Corp. v. Saenz ex rel. Saenz*, 873 S.W.2d 353, 361 (Tex. 1993)). "If following the warning and instructions actually provided would have prevented the injury despite the warning's inadequacy, the deficiency could not be the cause of any injury." *Id.* "In such a case, the plaintiff does not have a cause of action for failure-to-warn because there is no causation-in-fact." *Id.*

### 2. Analysis

The Tidwells contend that the instructions regarding the daily check of the AOLS in the Service and Adjustments Section of its Operator Manual do not constitute an adequate warning because they do not specifically state that there was a risk of tip-over, are incomprehensible by the ordinary user, and are not

prominently placed. The Tidwells further argue that were entitled to a presumption that Tidwell would have heeded a warning, if a warning had been given.

The presumption to which the Tidwells claim they were entitled arises only in cases in which no warning or instructions were given to the user. *See Magro*, 721 S.W.2d at 834. Here, the Operator Manual did instruct the user to perform a daily check of the AOLS. Specifically, the Service and Adjustments Section stated: "For safe operation of the crane when operating on rubber, the axle lockout valve should be checked daily as follows[.]" It then provides a seven-step process for performing the check. It is undisputed that Tidwell never read this.

The Texas Supreme Court has held that where "the warning that would have prevented injury was ignored, there is no presumption that some additional warning would have been heeded." *Saenz*, 873 S.W.2d at 360. But, even if the user did not read the warning, if the plaintiff can establish that the warning was not sufficiently prominent, the plaintiff is entitled to the presumption that reasonable notice would have been heeded. *Id.*

Tidwell cites *Saenz* for the proposition that the instructions in the Operator Manual should have been more prominent. *See id.* at 360–61. In *Saenz*, the issue was whether General Motors had adequately warned about the risk of overloading a vehicle. *Id.* at 360. The Texas Supreme Court held that the warning sticker,

17

which was located where gross vehicle weights are customarily placed, at eye level on the driver's doorjamb, and the presence of the operator manual inside of the vehicle, were sufficient to give the user reasonable notice of the warning. *Id.* at 361. The fact that the warning could have been more prominent did not entitle the plaintiff to a presumption that better or more prominent instructions in the case would have been followed. *See id.* The Court pointed out:

> Every warning can always be made bigger, brighter and more obvious. GM could have placed the warning where it could not possibly have been overlooked, perhaps engraved upon the dashboard, or backlit on the instrument panel. But it clearly would not be possible for GM to place every important warning in such a position of maximum prominence. It can always be argued that a single instruction should have been given more prominence and if it had, an accident might have been prevented. This argument, however, must be considered in the context of the product involved. When, as here, it is important to give a number of instructions concerning the operation of a vehicle, not all of them can be printed on the dashboard. Indeed, the more instructions and warnings that are printed in one place—on the dashboard, on a doorplate, or in the owner's manual—the less likely that any one instruction or warning will be noticed.

*Id.* at 360–61. Similarly, the issue here, as in *Saenz*, is not whether Terex could have placed its instructions to perform a daily check of the AOLS in a different, more prominent location in the Operator Manual, but, rather, whether the warning's actual placement was sufficient to give reasonable notice to a user of the crane to check the AOLS daily when operating on rubber.

18

At trial the Tidwells argued that the instructions were inadequate because they did not tell the reader the dangers of not following the instructions, including tip-over. There was also conflicting evidence whether the instructions to check the AOLS daily were directed to operators such as Tidwell or, by contrast, only to maintenance workers. The Tidwells rely on the testimony of safety expert Laughery, who testified that the instruction to check the AOLS should have been in the first three chapters of the Operator Manual, because those chapters are the ones directed to operators as opposed to maintenance workers, and operators are the users who should check the AOLS on a daily basis. But the Operator Manual itself draws no such distinction. In other words, nothing about the Operator Manual itself indicates that parts of it are intended to be read by operators and others by maintenance workers. On the contrary, the first section of the Operator Manual instructs that all operators and maintenance workers should read and be familiar with the entire Operator Manual before operating the crane: "Experienced, as well as inexperienced, operators will benefit by careful study of all materials presented here because, in preparing it expressly for the inexperienced, we have included many important details not ordinarily found in a manufacturer's manual of this kind." Moreover, it also instructs the user, "Before putting your crane to use, both operators and maintenance personnel should read and be thoroughly

19

familiar with this manual and all additional publications supplied with the crane, such as the load rating chart, the parts manual, [and] lubrication and maintenance instructions . . . ." The parties do not dispute that Tidwell received and had the opportunity to read the entire Operator Manual but chose to read only its first three chapters, which did not include the Service and Adjustments Section regarding performing a daily check of the AOLS when operating on rubber. Although they did not warn of the specific hazards that might result from a failure to check the AOLS on a daily basis, these instructions inform the reader that the AOLS should be checked daily when operating on rubber "*for safe operation*." The Tidwells did not argue that the substance of the instructions in the Service and Adjustments Section on checking AOLS were improper beyond their failure to warn against the specific consequences of not checking the AOLS. Even if he was not aware of the specific hazards that might befall him if he failed to check the AOLS daily, if Tidwell had heeded the instructions to check the AOLS daily, he would have discovered that the AOLS was not operational, and the accident would have been avoided. If a warning is given, which, if heeded, would have prevented the accident, there is no presumption that a better warning would have been followed. *Saenz*, 873 S.W.2d at 360; *Gillespie v. Century Prods. Co.*, 936 S.W.2d 50, 53 (Tex. App.—San Antonio 1996, no writ) (parents failed to establish that alleged

20

inadequacy in warning for car-seat caused child's death when testimony showed if father had read instructions provided with car-seat he would have placed child in proper rear-facing position). We conclude the Tidwells were not entitled to any presumption regarding the warnings or instructions. *See Saenz*, 873 S.W.2d at 360.

The evidence demonstrating that Tidwell failed to read the AOLS instructions provided in the Operator Manual likewise leads us to reject the contention that the warning was defective for failing to explain the consequences of not checking the AOLS. The evidence demonstrates that Tidwell failed to read the warnings provided and, therefore, Terex's failure to include a different, better warning could not have been a cause-in-fact of the accident. The jury was free to disregard the Tidwells' expert's testimony that operators were instructed to read only a portion of the Operator Manual and to find that the inadequacy of the warnings, if any, was not a producing cause of the accident. *See id.* at 361 (concluding that insufficiency of warning could not have been cause in fact of accident when plaintiff did not read warnings provided by defendant, because there was "no reason why they would have read the warnings which the court of appeals held should have been provided"); *see Gillespie*, 936 S.W.2d at 53. Viewing the evidence in the light most favorable to the jury's verdict, as we must, we conclude the evidence is legally sufficient to support the jury's finding that no marketing

21

defect was a producing cause of the accident. *See City of Keller*, 168 S.W.3d at 807. Likewise, weighing all of the evidence, we cannot say that the jury's finding that no marketing defect was a producing cause of the incident is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242.

We overrule the Tidwells' fourth issue.

### Jury Findings on Contributory Negligence

The Tidwells contend that the evidence was legally and factually insufficient to support the following jury findings: the jury's response in Question 3 that Tidwell was negligent and the jury's response in Question 4 that Tidwell's "percentage of responsibility" was seventy percent. Terex responds that these findings are supported by the evidence and in any event, the jury's negative findings on the two liability questions submitted to the jury rendered the complained-of findings immaterial.

A jury question is immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) (after jury found defendant was not proximate cause of occurrence any jury finding as to plaintiff's contributory negligence was harmless because it could not have altered effect of verdict). Here,

22

the jury's failure to find that either a design defect or a marketing defect was a producing cause of the accident rendered the jury's findings regarding Tidwell's contributory negligence immaterial; once the jury answered "No" to Questions 1 and 2, no response to the contributory negligence questions could have altered the effect of the jury's verdict. As the findings of Tidwell's contributory negligence (Questions 3 and 4) were immaterial, we need not address the sufficiency of the evidence to support them. *See Crowson v. Bowen*, 320 S.W.3d 486, 489 (Tex. App.—Fort Worth 2010, no pet.) (finding that defendant was not liable rendered any error in jury finding on plaintiff's negligence immaterial); *see also Fire Ins. Exch. v. Sullivan*, 192 S.W.3d 99, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Without a finding of a breach of that portion of the [insurance] policy, the jury's finding of damages on that issue became immaterial and should have been disregarded by the trial court.").

We overrule the Tidwells' fifth issue.

## Jury Instruction

In their first and second issues the Tidwells argue that the trial court erred in refusing to instruct the jury in Questions 3 and 4, the questions regarding contributory negligence and percentage responsibility, that it should not "consider

23

any act or omission of Tidwell that constitutes a mere failure to discover or guard against a product defect."

## A. Standard of Review

The trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010) (quoting *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002)). Generally, we review the trial court's decisions on how to charge the jury for an abuse of discretion; however, when the appellant challenges a definition as legally incorrect, we review the definition de novo. *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 382 (Tex. App.—Houston. [1st Dist.] 2011, no pet.) (citing *Crump*, 330 S.W.3d at 221).

We will not reverse a judgment for charge error "unless the error was harmful because it probably caused the rendition of an improper verdict . . . ." *Crump*, 330 S.W.3d at 225 (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009)). Charge error is "generally considered harmful if it relates to a contested, critical issue." *Id.* (quoting *Hawley*, 284 S.W.3d at 856). "Submission of an improper jury question can be harmless error if

24

the jury's answers to other questions render the improper question immaterial." *City of Brownsville*, 897 S.W.2d at 752.

**B.    Analysis**

The Tidwells contend that the trial court's refusal, over the Tidwells' objection, to instruct the jury not to consider any act or omission of Tidwell constituting a "mere failure to discover or guard against a product defect" rendered Questions 3 and 4 misstatements of the law.

Assuming, without deciding, that the trial court erred in failing to include the instruction as requested by the Tidwells, the error was harmless.  Given the jury's negative findings on the liability questions (design defect and marketing defect), its responses to Questions 3 and 4 could not alter the effect of the verdict and were therefore immaterial.  *See City of Brownsville*, 897 S.W.2d at 752; *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 580 (Tex. 2006) (per curiam) (holding any error was harmless where trial court denied plaintiffs' requested instruction on employer's negligent entrustment because jury found employee was not negligent, rendering negligent entrustment question immaterial).

We overrule the Tidwells' first and second issues.

## Expert witness

The Tidwells argue that the trial court erred in admitting the expert

testimony of Terex's expert Bradley Closson because Closson is not a licensed Texas engineer. According to the Tidwells, the Texas Occupations Code section 1001.003 precludes admissibility of expert testimony by an engineer not licensed in Texas. TEX. OCC. CODE ANN. § 1001.003 (West 2012).

## A.  Standard of Review

We review a trial court's determination whether to admit expert testimony for abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex. 1998); *see also Keo v. Vu*, 76 S.W.3d 725, 730 (Tex. App.— Houston [1st Dist.] 2002, pet. denied). The test is not whether the facts present an appropriate case for the trial court's action in the opinion of the reviewing court; rather, we gauge an abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Keo*, 76 S.W.3d at 730.

## B.  Applicable Law

### 1.  The Texas Engineering Practice Act

Section 1001.004(c) of the Texas Occupations Code provides that only a person licensed under that chapter may engage in the practice of engineering. TEX.

OCC. CODE ANN. § 1001.004(c)(2) (West 2012).  The practice of engineering is

defined, in part, as:

> [T]he performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work.

TEX. OCC. CODE ANN. 1001.003(b).  As the Tidwells point out, section

1001.003(b) specifies that the practice of engineering includes "providing an

expert engineering opinion or testimony."  TEX. OCC. CODE ANN.

§ 1001.003(c)(1).  However, section 1001.004(e) describes an exception for an

engineer providing testimony.  It states that the chapter does not apply to:

> prohibit or otherwise restrict a person from giving testimony or preparing an exhibit or document for the sole purpose of being placed in evidence before an administrative or judicial tribunal, subject to the board's disciplinary powers under Subchapter J regarding negligence, incompetency, or misconduct in the practice of engineering.

TEX. OCC. CODE ANN. § 1001.004(e)(2) (footnote omitted).

## 2.    Rule 702

Rule 702 permits an expert to testify on scientific, technical, or other

specialized subjects if the testimony would assist the fact finder in understanding

the evidence or determining a fact issue.  *See* TEX. R. EVID. 702; *Coastal

Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 597–98 (Tex. App.—Houston

[1st Dist.] 2002, pet. denied.).  Nothing in Rule 702 requires an expert to have a license in order to qualify as an expert.  Several courts of appeals have held that a license is not a requirement for qualification under Rule 702.  *See Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd) (licensure, or certification in the particular discipline is not a per se requirement); *see also Southland Lloyd's Ins. Co. v. Tomberlain*, 919 S.W.2d 822, 827 (Tex. App.—Texarkana 1996, writ denied) ("A requirement that an expert witness hold a professional license does not comport with the language or purpose of Rule 702."). Additionally, the Texas Supreme Court noted "that Rule 702 does not require a witness to have any particular license to qualify as an expert."  *Reid Road. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852 n.3 (Tex. 2011).

**C.    Analysis**

Although it is well settled that one need not have a license to qualify as an expert witness under Rule 702, the Tidwells argue that because the Texas Occupations Code defines the practice of engineering to include "providing an expert engineering opinion or testimony," and Closson is not a licensed engineer in Texas, Closson's testimony was inadmissible at trial.  *See* TEX. OCC. CODE ANN. 1001.003(c)(1).    Our sister court previously rejected this argument.    In

28

*Northborough*, the Fourteenth Court of Appeals rejected an argument that an expert who was not licensed as an engineer, architect, or landscape architect, should not be permitted to testify as an expert. *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 194 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). In reaching its holding, the court relied, in part, on the exception enumerated in the former version of Texas Occupations Code section 1001.004(e)(2)[1] to the effect that the statute does not prohibit or otherwise restrict a person from giving testimony or preparing an exhibit or document "for the sole purpose of being placed in evidence before an administrative or judicial tribunal . . . ." *Id.* (quoting Act of May 27, 1997, 75th Leg., R.S., ch. 344, § 21, 1997 Tex. Gen. Laws 1462, 1470, *repealed by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 13(a), 2001 Tex. Gen. Laws 4570, 4576 (current version at TEX. OCC. CODE. ANN. § 1001.004(e)(2)(West 2011)). The court also noted, as other courts have, that nothing in Rule 702 requires a witness to have a license in order to testify as an expert. *See id.* On the contrary, "the very language of Rule 702 and the case law interpreting it provide that experience alone can provide a sufficient basis to qualify a witness as an expert." *Gregory v. State*, 56 S.W.3d 164, 180 (Tex.

---

[1]    In 2003, the Texas Occupations Code was amended and this section now appears in Texas Occupations Code section 1001.004(e)(2). The amendments did not alter the substance of the statute.

App.—Houston [14th Dist.] 2001, pet. dism'd); *see also id.* at 179–80 (non-physician could qualify as medical expert because "a medical license or degree is not the litmus test for qualification as an expert witness").

Here, the trial court could have found that the Occupation Code did not prohibit Closson's testimony because it fell within the testimonial exception of section 1001.004(e)(2). TEX. OCC. CODE ANN. § 1001.004(e)(2). Likewise, it could have concluded that Closson's experience with cranes, which is amply demonstrated in the record, qualified him as an expert under Rule 702. Accordingly, the trial court did not abuse its discretion in allowing Closson to testify as an expert witness. *See Northborough*, 987 S.W.2d at 194.

We overrule the Tidwells' eighth issue.

### Exclusion of Evidence

The Tidwells argue that the trial court erred in excluding three pieces of evidence. First, they contend that the Rough Terrain Checklist and Maintenance Checklist, both of which were revised by Terex shortly after Tidwell's accident to include an instruction to check the AOLS daily, were admissible as evidence of a subsequent remedial measure and for impeachment purposes, respectively. The Tidwells also argue the trial court erred in excluding a written report and oral testimony regarding a crane tipping incident similar to Tidwell's.

30

## A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See id.* We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment or probably prevented an appellant from properly presenting his case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *McShane*, 239 S.W.3d at 243; *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43.

## B.    Checklists

The Tidwells assert that the trial court abused its discretion by excluding their proposed exhibits 1B and 1F, which are revised versions of Terex's Rough Terrain Checklist and Maintenance Checklist, respectively. The revised versions instruct the crane's user to check the AOLS daily, regardless of whether it is operating on rubber. It is undisputed that Terex created these versions of the checklists approximately one month after Tidwell's accident.

31

## 1.      Revised Rough Terrain Checklist

The Tidwells first argue that exhibit 1B, which reflects a subsequent remedial measure taken by Terex, was admissible under Texas Rule of Evidence 407(a).  The version of the Rule applicable here states:

> When, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent remedial measures it not admissible to prove negligence or culpable conduct in connection with the event.  This rule does not require the exclusion of evidence of subsequent remedial measures for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment.  Nothing in this rule shall preclude admissibility in products liability cases based on strict liability.

At the pre-trial hearing on Terex's motion in limine, the Tidwells argued that because this was a strict liability case, Rule 407(a) did not preclude admissibility of exhibit 1B.  Terex acknowledged that the Tidwells pleaded strict liability claims, but argued that exhibit 1B was nevertheless inadmissible because the Tidwells had also pursued a negligence claim.  The trial court found exhibit 1B inadmissible, explaining:

> So, I don't agree with the plaintiffs' assertion that in this case the — the change in the document is going to be admissible.  I do think it was clearly feasible to do that.  I think that—the labeling itself, I just don't think it's admissible under the rules.  I don't think you need it frankly, but I also don't think you're necessarily entitled to it reading those cases.

At trial, Terex interrupted the Tidwells' questioning of their expert Jordan because it was concerned that Jordan was about to mention the subsequent remedial measure reflected in exhibit 1B. The Tidwells' attorney stated that he was "not going to go into the axle lockout change and that addition to the checklist." He made a bill to show that Terex changed its Rough Terrain Checklist after Tidwell's accident, noting that the revised version differs from the previous version because the former instructed that there be a daily check of the AOLS even if the crane was not operating on rubber. Terex's attorney objected that "the conversation that happened after the accident is irrelevant and overly prejudicial; and any testimony regarding the change in the checklist is irrelevant as a subsequent remedial measure."

We conclude that the trial court did not abuse its discretion in excluding exhibit 1B or oral testimony regarding Terex's revision of the checklist after Tidwell's accident. Texas Rule of Evidence 105 provides that if evidence is excluded by the trial court that is admissible for one purpose but not admissible for another purpose, the proponent of the evidence must expressly offer the evidence for its limited, admissible purpose or it waives its complaint for review. *See* TEX. R. EVID 105(b); *Fed. Pac. Elec. Co. v. Woodend*, 735 S.W.2d 887, 892 (Tex. App.—Fort Worth 1987, no writ) (evidence of subsequent remedial measures was

inadmissible for negligence claim but admissible with limiting instructions for strict liability claim).  Here, the Tidwells did not request that the trial court admit the testimony with a limiting instruction that the jury could consider it only for the products liability claims, which is what Texas Rule of Evidence 105(b) requires.  Accordingly, the Tidwells waived this complaint.  *See Smith v. Spillman*, No. 05-99-00227-CV, 1999 WL 788602, at *6 (Tex. App.—Dallas Oct. 5, 1999, no pet.) (mem. op., not designated for publication) (appellant waived complaint for review by failing to offer otherwise inadmissible evidence for limited purpose).

The Tidwells argue that the subsequent remedial measure should have been admissible to show control.  During trial, the Tidwells did not argue that the evidence was admissible to show control and therefore they have failed to preserve this argument for our review.  *See* TEX. R. APP. P. 33.1; *Aldridge v. Avara*, No. 14-05-01283-CV, 2007 WL 2366964, at *6 (Tex. App.—Houston [14th Dist.] Aug. 21, 2007, no pet.) (because appellant did not argue evidence admissibility under same hearsay exception at trial as she did on appeal, she failed to preserve error for review); *McKee v. McNeir*, 151 S.W.3d 268, 270 (Tex. App.—Amarillo 2004, no pet.) (finding proponent of evidence waived complaint that trial court erred in excluding evidence because proponent's stated grounds for admission at trial failed to comport with grounds raised on appeal); *see also Reyna v. State*, 168 S.W.3d

173, 179 (Tex. Crim. App. 2005) (failure to present particular argument to trial court in support of admission of excluded evidence waives that argument for appeal).

### 2.    Maintenance Checklist

The Tidwells also argue that exhibit 1F, Terex's revised Maintenance Checklist, was admissible to impeach the testimony of Terex's witness, Closson. During cross examination, the Tidwells' counsel asked Closson whether certain parts of the Operator Manual mentioned checking the AOLS:

> Tidwells' Counsel: Under the daily checklist for the maintenance machine checklist, is there one word on there about checking the AOL[S]?
>
> Closson:  Item 7 in the left-hand column, seventh box down.
>
> Tidwells' Counsel: It says check hydraulic components.  Correct?
>
> Closson: Yes, sir.
>
> Tidwells' Counsel: If it has check hydraulic components there and that was a proper alert, there would never be any reason to ever say anything else, would there?
>
> Closson: I'm sorry.  I don't understand the question.

Outside of the presence of the jury, Tidwell argued that the revised Maintenance Checklist, plaintiff's proposed exhibit 1F, was admissible to impeach Closson.   Tidwell argued that because Closson testified that the item on the

35

checklist regarding checking hydraulic components was sufficient to notify users to check the conditions of the AOLS, the revised Maintenance Checklist that included an instruction to check the AOLS was admissible as impeachment evidence. The trial court did not allow the Tidwells to impeach Closson with the revised checklist.

Texas Rule of Evidence 613(a) permits impeachment with a prior inconsistent statement. The applicable portion states:

> In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.

TEX. R. EVID. 613(a). Here, Closson testified that the instruction to check the hydraulic components listed in the "Maintenance Machine Checklist" was sufficient to alert the maintenance workers to check the AOLS. The Tidwells' attorney sought to impeach Closson by offering exhibit 1F, the revised machine maintenance checklist prepared by Terex, not Closson. Accordingly even if the document was inconsistent with Closson's statement, the document could not be used to impeach Closson because it was not a statement made by him. *Keetch v. Kroger Co.*, 845 S.W.2d 276, 282 (Tex. App.—Dallas 1990) *aff'd*, 845 S.W.2d 262 (Tex. 1992) (witness cannot be impeached by contradictory statement made by co-

36

worker).  The trial court did not abuse its discretion in refusing to admit exhibit1F, the maintenance machine checklist, for the purpose of impeaching Closson.

We overrule the Tidwells' sixth issue.

### 3.    Similar Crane Tip-Over Incident

In their seventh issue, the Tidwells argue that the trial court erred in excluding plaintiff's proposed exhibit 61 and testimonial evidence relating to a similar crane "tip-over" incident that occurred in 2003, the year following Tidwell's accident.

> To preserve error in the exclusion of evidence, a party must (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which [the evidence] is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible, make a record, through a bill of exceptions, of the precise evidence the party desires admitted.

*Ulogo v. Villanueva*, 177 S.W.3d 496, 501–02 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Texas recognizes two types of offers to preserve error: the offer of proof and the formal bill of exception.  *See* TEX. R. EVID. 103(a), (b); TEX. R. APP. P. 33.2; *Fletcher v. Minnesota Mining & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

During the Tidwells' examination of their witness, Jordan, the Tidwells' counsel handed Jordan a copy of exhibit 61 and began to question him about a

crane tip-over incident other than the one involving Tidwell. Terex's counsel objected on the grounds that the incident was "after [Tidwell's] accident," hearsay, and irrelevant. The trial court sustained Terex's objection. Rather than address the objections, the Tidwells' counsel turned his questioning to yet another crane tip-over incident. Tidwells' counsel did not argue the admissibility of exhibit 61 or testimony about the incident described therein at any other point during the trial, nor did he make an offer of proof or bill of exception after trial. By failing to give the trial court reasons the exhibit or oral testimony were admissible and failing to make an offer of proof, the Tidwells waived review of the trial court's exclusion of exhibit 61 and related testimony describing the  crane tip-over incident described in it. *See Wade v. Comm'n for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (party who fails to make offer of proof or bill of exception waives review of possible error).

We overrule the Tidwells' seventh issue.

### Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

38